```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| VINCENT K., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Case # 1:21-cv-138-DB |
| § | |
| COMMISSIONER OF SOCIAL SECURITY, § | MEMORANDUM DECISION |
| § | AND ORDER |
| Defendant. § | |

## INTRODUCTION

Plaintiff Vincent K. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 30).

For the reasons set forth below, Plaintiff's motion (ECF No. 19) is **GRANTED**, the Commissioner's motion (ECF No. 20) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings as set forth below.

## BACKGROUND

This case has a long history, including three administrative hearings and two lawsuits. Plaintiff protectively filed an application for DIB on November 24, 2015, alleging disability beginning October 1, 2014 (the disability onset date), due to a variety of musculoskeletal ailments. Transcript ("Tr.") 59, 130-38, 163. His claim was initially denied on January 12, 2016 (Tr. 71-80), after which he requested a hearing (Tr. 81-82).

On June 21, 2016, Administrative Law Judge Bryce Baird ("the ALJ") conducted a hearing in Buffalo, New York, at which Plaintiff appeared and testified and was represented by Elizabeth Haungs, an attorney. Tr. 18, 31-58. Sandra Smith-Cordingly, an impartial vocational expert ("VE"), also appeared and testified at the hearing. Tr. 18, 51-56. The ALJ issued an unfavorable decision on September 14, 2016, finding that Plaintiff was not disabled. Tr. 15-30.

The Appeals Council denied Plaintiff's request for review on January 19, 2017 (Tr. 1-4), after which Plaintiff filed a lawsuit in the United States District Court for the Western District of New York on March 20, 2017, Case No. 1:17-cv-00241-HKS. On October 10, 2018, the Court granted Plaintiff's motion for judgment on the pleadings and remanded the case for further administrative proceedings based on the ALJ's failure to address the VA's (Veterans Administration) award of individual unemployability benefits.[1] Tr. 802-08. The Court explained that while the VA's award of individual unemployability benefits was not binding on the Social Security Administration, it was entitled to some weight. Tr. 807.

On December 14, 2018, the Appeals Council vacated the ALJ's September 14, 2016 decision and remanded the claim for further proceedings, including offering Plaintiff a new hearing. Tr. 812. On July 16, 2019, the ALJ conducted a second hearing in Buffalo, New York, at which Plaintiff appeared and testified and was represented by Jeanne Murray, an attorney. Tr. 697, 718-53. After that hearing, additional efforts were made to further develop the record, and another hearing with a medical expert was scheduled for March 24, 2020, which was ultimately postponed and rescheduled to a later date. Tr. 697.

---

[1] The record reflects that Plaintiff served as an aircraft mechanic in the United States Air Force from September 1993 to November 2000, and then in the Air National Guard from December 2000 to October 2014. Tr. 39, 164.

2

Thereafter, on June 24, 2020, the ALJ conducted a telephonic hearing,[2] at which Plaintiff appeared and testified and was represented by Nicholas DiVirgilio, an attorney. Tr. 698, 1895-1945. Orthopedic surgeon Richard Jaslow, M.D. ("Dr. Jaslow"), an impartial medical expert, and Christine DiTrinco, an impartial vocational expert, also appeared and testified at the hearing. Tr. 698. 1895. After the June 24, 2020 hearing, more updated medical records, including from the VA, were obtained and entered into the record (Tr. 1663-64, 1774-1882, 1888-90), and the ALJ sent the updated file to Dr. Jaslow for his updated opinions (Tr. 1888-89, 1891-94). Tr. 698. On November 25, 2020, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. Tr. 694-717. Plaintiff appeals that decision directly to this Court.

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

---

[2] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 525.

## II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual

4

functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his November 25, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity since October 1, 2014, the alleged disability onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy, status post laminectomy (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b),[3] because he is able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for four hours in an eight-hour workday, and sit for four hours in an eight-hour workday. The claimant must be able to change positions at will while remaining on-task. Although the claimant is unable to use foot controls with his left foot, crawl, or climb ladders, ropes, or scaffolds, he is able to occasionally balance, stoop, kneel, crouch, and climb ramps and stairs. The claimant is able to engage in no more than frequent reaching in any direction bilaterally, and no more than frequent handling, fingering, and feeling bilaterally. The claimant must avoid exposure to excessive vibrations, and he must avoid exposure to hazards such as unprotected heights or moving machinery. The claimant must also avoid work that requires driving a vehicle.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

7. The claimant was born on April 15, 1975 and he was 39 years old, which is defined as a younger individual, age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2014 through the date of this decision (20 CFR 404.1520(g)).

Tr. 694-710.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on November 24, 2015, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 710.

## **ANALYSIS**

Plaintiff asserts two points of error. First, Plaintiff argues that the RFC finding was faulty because the ALJ did not "follow Social Security Ruling ["SSR"] 96-9p and determine a sit/stand option with the requisite specificity." *See* ECF No. 19-1 at 15-19. Second, Plaintiff argues that the ALJ erred at step two by not finding Plaintiff's right knee injury to be a severe impairment, and thus, not accounting for any resulting limitations in his RFC finding. *See id*. at 19-23.

In response, the Commissioner argues that the ALJ's RFC finding for light work is based on substantial evidence of record and properly allows Plaintiff a sit/stand at-will option. *See* ECF No. 20-1 at 6-8. The Commissioner further argues that SSR 96-9p is inapplicable here because it applies to RFCs for sedentary and less than sedentary work, and in this case, the ALJ found that Plaintiff retained the RFC for less than light work. *See id*. Regarding Plaintiff's second point, the Commissioner argues that the ALJ properly assessed the severity of Plaintiff's impairments at step

6

two and throughout the remaining steps of the sequential evaluation. *See id*. at 8-12. In addition, argues the Commissioner, any error at step two is harmless because Plaintiff has failed to show that his right knee condition warranted additional limitations beyond those already found by the ALJ. *See id*.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that Plaintiff's first argument has merit. "[T]he ALJ had a duty to specify the extent of the limitation because a claimant's need to alternate between sitting and standing 'may erode the occupational base'—for example, by making even sedentary or light work impossible to perform." *Kimberly M. v. Comm'r of Soc. Sec.*, No. 19-CV-1546-LJV, 2020 WL 6947346, at *3 (W.D.N.Y. Nov. 25, 2020) (citing *Overbaugh v. Astrue*, No. 607-CV-0261 NAM/DEP, 2010 WL 1171203, at *9 (N.D.N.Y. Mar. 22, 2010), 2010 WL 1171203, at *9; *Iannopollo v. Barnhart*, 280 F. Supp. 2d 41, 50 (W.D.N.Y. 2003)). "When the record indicates that a plaintiff has significant limitations with regard to his ability to sit for extended periods of time, the [ALJ] should engage in a detailed discussion concerning plaintiff's restrictions." *Overbaugh*, 2010 WL 1171203, at *8–9 (quoting SSR 96–9p, 1996 WL 374185, at *7).

Because the ALJ's failure to properly determine how the RFC would affect findings made at the fifth step of the sequential analysis, remand is required so that the ALJ can specify the

frequency of the sit/stand limitation and obtain additional VE testimony regarding what jobs Plaintiff could still be perform in light of such limitations.

On January 14, 2015, Plaintiff was examined by consultative internal medicine examiner Hongbiao Liu, M.D. ("Dr. Liu"). Tr. 208-12. Plaintiff complained of constant, sharp pain of 6/10 intensity with associated numbness and tingling in bilateral legs, the left side worse than the right. Tr. 208. Plaintiff also reported that he could walk for 1/2 block and he had to change position every five minutes while sitting or standing. *Id*. On physical examination, Dr. Liu observed that Plaintiff walked with a limping gait; could not perform heel and toe walking; and could squat only 10% of normal due to low back pain. Tr. 209. Plaintiff had a limited range of lumbar spine motion, with flexion and extension 65 degrees, lateral flexion of 20 degrees bilaterally, and rotation of 20 degrees bilaterally. Tr. 210. Straight leg raise ("SLR") test was positive at 20 degrees on the left and 35 degrees on the right, confirmed in the supine and sitting positions. *Id*. Dr. Liu diagnosed chronic low back pain and history of gastroesophageal reflux disease (Tr. 210) and opined that Plaintiff had "mild to moderate" limitation for prolonged walking, bending, and kneeling (Tr. 211).

Plaintiff underwent a second examination by Dr. Liu on January 8, 2016. Tr. 362-65. Dr. Liu again opined that Plaintiff had "mild to moderate" limitation for prolonged walking, bending, and kneeling." Tr. 364.

On March 4, 2019, VA physical therapist Joseph J. DiRienzo ("Mr. DiRienzo") completed a Functional Capacity Evaluation ("FCE"). Tr. 1099-1102; *see also* Tr. 1380-82. Mr. DiRienzo indicated that Plaintiff could only sit for a total of four hours, stand for a total of two hours, lift and carry 20 pounds occasionally and 10 pounds frequently in an 8-hour workday. Tr. 1101. Mr. DiRienzo opined that Plaintiff should be able to sit for approximately 30 minutes at any single time and should be able to stand for approximately 10 minutes at any single time. *Id*. Mr. DiRienzo further opined that Plaintiff was able to frequently reach overhead and use his hands for handling,

8

fingering or feeling, but is unable to push or pull; occasionally use his right foot but never use his left foot to operate foot controls; never climb ladders or scaffolds, occasionally climb stairs and ramps; and occasionally kneel and stoop. *Id*.

In July 2019, Mr. DiRienzo responded to clarification requests from the ALJ regarding the results of Plaintiff's FCE. Tr. 1651-52, 1654-56. In his response, Mr. DiRienzo stated that various functional tests were performed, including lifting and carrying, observation of sitting, standing and walking, functional upper extremity range of motion and lower extremity mobility, ability to stoop, kneel and crouch, and observation of spinal range of motion. Tr. 1654. Mr. DiRienzo noted that "the FCE was compressed to within a 1-hour period," and he, therefore, relied on Plaintiff's subjective input regarding how Plaintiff "tolerates various positions, movements, postures and functional tasks in an 8-hour workday." *Id*. He also stated that Plaintiff's medical history and radiology reports factored into his conclusions, including Plaintiff's most recent MRI report showing "a disc protrusion at L5-S1 in very close proximity to the descending S1 nerve roots bilaterally." Tr. 1654, 1655. Mr. DiRienzo opined that Plaintiff needed the ability to frequently change positions and was quite limited in the ability to lift, carry, or maintain any static posture for a prolonged time. Tr. 1654. Mr. DiRienzo indicated that "[his] recommendation to patients who suffer from a disc herniation is to always limit sitting time to a maximum of 30 minutes and most often only 20 minutes." Tr. 1655. Mr. DiRienzo reiterated that "since [Plaintiff's] FCE was performed within an hour time constraint, repetitive periods of standing and walking to determine a true accumulative time in one day could not be tested," and he determined his conclusions from [Plaintiff's] subjective input as well as the MRI results and spinal surgeon's report." Tr. 1656. Mr. DiRienzo further stated that Plaintiff "also demonstrated an antalgic gait;" "his somewhat decreased coordination and balance limits his exposure to mechanical moving parts and operation

of foot controls;" and "the period of 10-15 minutes limitation for standing and walking was observed in the clinic." *Id*.

Orthopedic surgeon Dr. Jaslow testified as a medical expert at the June 24, 2020 hearing. Tr. 1903-12. Based on his review of the administrative record at the time, Dr. Jaslow testified that Plaintiff had degenerative disc disease in the lumbar spine, most pronounced at the last two levels at L4-5 and L5-S1. Tr. 1904. Dr. Jaslow opined that Plaintiff was able to lift and carry thirty pounds occasionally and twenty pounds frequently. Tr. 1906. Dr. Jaslow also testified that Plaintiff was able to sit for five hours total in an eight-hour workday and stand for three to four hours total in an eight-hour workday, but he needed "to have the option of being able to go from a sitting to a standing position as he needs to dictated by his impairments." Tr. 1906-07. Dr. Jaslow further opined that Plaintiff had no limitations in reaching, handling, fingering, and feeling; he could occasionally use the left foot for foot controls; and occasionally stoop and kneel. Tr. 1907-08. Dr. Jaslow also testified that patients with degenerative disc disease have fluctuating symptoms and clarified that some days would be worse than others in regard to the amount of time spent sitting, standing, or walking, and the person would need a job that allowed the ability to change positions from sitting to standing or walking at will. Tr. 1911-12.

As noted above, additional medical records were submitted following the June 24, 2020 hearing (Tr. 1663-64, 1774-1882, 1888-90), after which Dr. Jaslow reviewed the file again and completed an interrogatory with updated opinions (Tr. 1888-89, 1891-94). Tr. 698. In the September 2020 interrogatory, Dr. Jaslow stated that the additional records "[did] not change any of [his] testimony [regarding Plaintiff's] lumbar or cervical[4] spine impairments." Tr. 1893. However, he noted that an October 2019 MRI of the right knee revealed a medial meniscus tear

---

[4] The Court notes that Dr. Jaslow initially testified only that Plaintiff had degenerative disc disease in the lumbar spine (Tr. 1904), so his mention of a cervical spine impairment in this interrogatory (Tr. 1893) appears to be a harmless error.

10

with grade 2/3 chondromalacia and opined that Plaintiff would require "scope and partial meniscectomy." *Id*. Dr. Jaslow opined that this impairment [would] not last 12 months. *Id*.

Citing SSR 96-9p, Plaintiff argues that the ALJ did not determine a sit/stand option with the requisite specificity. *See* ECF No. 19-1 at 15-19 (citing SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). According to Plaintiff, the ALJ's RFC finding that Plaintiff could work but "must be able to change positions at will while remaining on-task" was "vague" and failed to set forth the frequency and length of time in specific terms. *See* ECF No. 19-1 at 17 (citing Tr. 702). Further, argues Plaintiff, vocational experts require limitations expressed in durational terms defined in the DOT or the Commissioner's regulations (such as occasional or frequent) or expressed in numerical terms such as the number of minutes or the amount of weight in pounds that can be lifted or carried. *See* ECF No. 19-1 at 17 (citing SSR 96-9p).

Although the Commissioner is correct that SSR 96-9p does not specifically indicate that the alternate sitting and standing specificity applies to light work, an earlier SSR makes clear that the Commissioner does apply it to light work and that the courts concur with this. SSR 83-12 provides that:

> In some disability claims, the medical facts lead to an assessment of [residual functional capacity] which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.).

SSR 83–12, 1983 WL 31253, at *4 (1983). SSR 83-12 goes on to note that "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." 1983 WL 31253, at *4. Notably, the jobs at step five in this claim are all unskilled. Tr. 709.

11

Furthermore, courts have consistently applied the need for alternate sitting and standing specificity for cases involving both sedentary and light work. *See Kimberly M.*, 2020 WL 6947346, at *4 (finding that ALJ's failure to either address or incorporate opined frequency limitations into the RFC finding for light work was error). "When the record indicates that a [claimant] has significant limitations with regard to [her] ability to sit for extended periods of time, the ALJ should engage in a detailed discussion concerning [the claimant's] restrictions." *See id*. (quoting *Overbaugh*, 2010 WL 1171203, at *9). Under such circumstances, the RFC "must be specific as to the frequency of the individual's need to alternate sitting and standing." *See id*. (quoting SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996)). That is because a claimant's need to alternate between sitting and standing "may erode the occupational base"—for example, by making even sedentary or light work impossible to perform." *See id*. (citing *Overbaugh*, 2010 WL 1171203, at *9; *Iannopollo*, 280 F. Supp. 2d at 50).

The ALJ's at will sit/stand option is purportedly based on Dr. Jaslow's opinion that Plaintiff was able to perform work-related activities consistent with less than a full range of light work and must be able to go from sitting to standing as necessary. Tr. 706, 1906-10. Dr. Jaslow testified that Plaintiff "has to have the option of being able to go from a sitting to a standing position as he needs to dictated by his impairments." Tr. 1907. He further testified that Plaintiff "needs to have an employer who's willing to work with him as far as giving him [the] option [to] . . . be his own boss as far as going from a sitting to a walking, a standing position." Tr. 1911.

Dr. Liu noted in January 2015 that Plaintiff complained of constant, sharp pain of 6/10 intensity with associated numbness and tingling in both legs and that he needed to change position every 5 minutes while sitting or standing. Tr. 208. In January 2016, Dr. Liu again noted that Plaintiff complained of constant sharp low back pain of 7/10 intensity with associated numbness

and tingling in the left leg and urination incontinence and that he has to change positions every 5 minutes while sitting or standing. Tr. 362.

Mr. DiRienzo opined that Plaintiff should be able to sit for approximately 30 minutes at any single time, but only stand for approximately 10 minutes at any single time (Tr. 1102) and sit for 30 minutes but on a bad day with a flare-up, only 10 minutes (Tr. 1923-24). Mr. DiRienzo stated that his recommendation to patients who suffer from a disc herniation is to always limit sitting time to maximum of 30 minutes and "most often only 20 minutes." Tr. 1655.

The ALJ explained that the RFC finding "is consistent with and supported by the observations of treating, reviewing, and examining sources in the medical records, as well as the overall medical and other evidence." Tr. 707. The ALJ gave significant weight to the opinions of Dr. Jaslow; significant weight to the opinions of Dr. Liu, and significant weight to the opinions of Mr. DiRienzo. Tr. 707.The ALJ noted that Mr. DiRienzo is not an acceptable medical source, and he cited general studies, rather than specific findings that fully supported his conclusions regarding Plaintiff's specific functional limitations, but the ALJ nevertheless "gave his reports significant consideration due to their detail and his experience" and based on Mr. DiRienzo's reports, he restricted Plaintiff to four hours of sitting *Id*. The ALJ also noted that Dr. Jaslow limited Plaintiff to five hours of sitting in an 8-hour workday, while Dr. Liu did not assign any sitting limitations. *Id*. Thus, while the ALJ's RFC limitations specified the number of hours Plaintiff could walk, stand, or sit without interruption, the sit/stand option did not specify the frequency with which Plaintiff could alternate, or whether he would have to spend a specific time in one option or the other.

Here, the record shows that Plaintiff repeatedly stated that he could only stand for only 5-10 minutes at one time. Plaintiff testified that when he changes positions from sitting to standing, he often must "kind of turn left, turn right, and then sometimes [] squat, and then if that doesn't

13

work, then [he has] to like kind of move around, walk[ing] from his living room to the kitchen to the living room to the kitchen to the back hall." Tr. 1924. Plaintiff also testified about his difficulty going from a seated position to a standing position, stating that he gets a "shooting pain that starts in [his] hip" and he must be "very, very careful when [he] stands from a seated position." Tr. 47-48. Thus, Plaintiff's testimony does not appear to indicate that he would be able to remain "on-task" while changing positions, as the ALJ assessed in the RFC limitation. Tr. 702. Plaintiff's testimony, if credited, would require the ALJ to obtain further testimony from a vocational expert to determine the extent to which the occupational base of light, unskilled work is eroded. *See Kruppenbacker v. Berryhill*, No. 6:17-CV-06068-MAT, 2017 WL 6275727, at *4 (W.D.N.Y. Dec. 11, 2017) (quoting SSR 83-12, 1983 WL 31253, at *4).

As noted previously, the jobs at step five in this claim are all unskilled. Tr. 709. The VE testified that an individual with Plaintiff's limitations would be able to perform the following three representative occupations: (1) Cashier, Parking Lot Garage, DOT No. 211.462-010, light exertion, unskilled (SVP 2); (2) Gate Attendant, DOT No. 344.667-010, light exertion, unskilled (SVP 2); and (3) Information Clerk, DOT No. 237.367-018, light exertion, unskilled (SVP 2). The VE further testified that the above-listed three jobs could be performed sitting or standing, and that they could be performed despite the restriction to four hours sitting and four hours standing or walking. Tr. 709-10, 1937. However, because the sit/stand option did not specify the frequency with which Plaintiff could alternate or whether he would have to spend a specific time in one option or the other, the extent to which the occupational base of light, unskilled work is eroded is unclear. *See Kimberly M.*, 2020 WL 6947346, at *4; *Kruppenbacker*, 2017 WL 6275727, at *4. Therefore, the Court cannot deem the ALJ's error harmless. On remand, the ALJ must be "specific as to the frequency of [Plaintiff's] need to alternate sitting and standing." *See* SSR 96-8p, 1996 WL 374184, at *7.

Because the Court has already determined, for the reasons discussed above, that remand of this matter for further administrative proceedings is necessary, the Court declines to address Plaintiff's additional arguments. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted*); Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 2137776, at *28 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, *261 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 19) is **GRANTED**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 20) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED**.

*/s/ Don D. Bush*
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE